IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY PAUL GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-570 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Anthony Paul Garcia ("Garcia") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Garcia alleges that the Administrative Law Judge ("ALJ") committed error in weighing the opinion of his treating physician, George Wagner, M.D.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's decision to adopt parts of Dr. Wagner's opinion. Accordingly, I **RECOMMEND DENYING** Garcia's Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14, 16).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Garcia failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Garcia bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Garcia was born on February 23, 1963 (Administrative Record, hereinafter "R." at 195), and was considered a younger person under the Act on his alleged onset date. R. 281; 20 C.F.R. § 416.963(c). Garcia has an eighth grade education, and was awarded a GED in 2001. R. 470. Garcia previously worked as an assembly line worker (light unskilled work), a cook (semi-skilled, light work), machine operator (unskilled light work), and a manager at a health center (semi-skilled, light work). R. 281. Garcia reported that during the relevant period, he had the capacity to wash dishes, do light dusting, shop for groceries, cook in the oven and microwave, take short walks, and pay his bills. R. 469.

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

## Claim History

Garcia protectively filed his application for SSI on May 4, 2007, claiming that his disability began on December 31, 2000. R. 196. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 90–93, 95–96. On September 19, 2009, ALJ Frederick McGrath held a hearing to consider Garcia's disability claim. R. 43–47. However, due to incarceration at Valhalla County Jail, Garcia did not attend the hearing and his case was dismissed. R. 44–46, 84. Garcia filed a Request for Review with the Appeals Council, seeking good cause for missing the hearing. On July 1, 2010, the Appeals Council remanded the claim to the ALJ for a new hearing. R. 88–89. On February 8, 2011, ALJ Geraldine H. Page held a second administrative hearing. R. 49–79. Garcia, his attorney, and vocational expert, Mr. Robert Jackson were all in attendance at the second hearing. R. 49–79.

On March 25, 2011, the ALJ entered her decision denying Garcia's claims. R. 33. The ALJ found that Garcia suffered from the severe impairments of degenerative disc disease of the lumbosacral spine, degenerative joint disease of the right shoulder, borderline intellectual functioning, post-traumatic stress disorder ("PTSD"), substance induced mood disorder, alcohol abuse, history of cocaine abuse, and anti-social personality traits. R. 21. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 25. The ALJ further found that Garcia retained the residual functional capacity ("RFC") to perform sedentary work, except that he is limited to: lifting/carrying twenty pounds occasionally and ten pounds frequently; standing for a total of two hours, walking for a total of two hours, and sitting for a total of 6 hours in an 8 hour workday; occasionally using ramps, stairs, balancing, kneeling, stooping, crouching, and reaching with his right shoulder. The ALJ found that Garcia should not crawl or be exposed to extremely hot/cold temperatures, humidity,

pollutants, irritants, hazardous machinery, unprotected heights, climbing ladders/ropes/scaffolds, or being on vibrating surfaces; is limited to occasional interaction with co-workers and the general public; and is limited to work that has only simple, routine, repetitive, unskilled tasks R. 27. The ALJ determined that Garcia could not return to his past relevant work as a flagger, cook, tire changer, stock clerk, or a construction laborer (R. 31), but that Garcia could work at jobs that exist in significant numbers in the national economy: namely, telephone order clerk, general production worker, and, material handler. R. 32. Thus, the ALJ concluded that he was not disabled. R. 33. On September 17, 2012, the Appeals Council denied Garcia's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Garcia raises a single issue on appeal—whether the ALJ erroneously disregarded a portion of the opinion of his treating physician, George Wagner, M.D. On February 8, 2011, Dr. Wagner completed a medical source statement of ability to do work-related activities (physical), and found that Garcia is capable of lifting/carrying twenty pounds frequently; sitting four hours in an eight-hour workday; has limited pushing/pulling in his lower extremities; can occasionally perform postural activities; and would be absent from work more than three days per month. R. 665–68. The ALJ considered Dr. Wagner's opinion and afforded it "great weight, except that this Administrative Law Judge finds that the claimant can sit for 6 hours in an 8-hour workday and he should not have to be absent from work more than one time a month." R. 31. Garcia argues that it was error for the ALJ to give Dr. Wagner "great weight," but not adopt his findings in full.

The ALJ is charged with reviewing all of the relevant medical evidence in the record and determining the appropriate weight to which it is entitled, based upon a number of factors. The

5

regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ may give less than controlling weight to a treating physician's opinion, but must give "good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2); Saul v. Astrue, Civ. Action No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). If the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the ALJ must consider the following factors to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5).

Garcia's argument appears to equate "great" weight with "controlling" weight. Garcia's argument also implies that an ALJ must either accept a treating physician's opinion in full or reject it. The regulations are not so constraining. Rather, "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." Social Security Regulation ("SSR") 96–2p.

Here, the ALJ considered all of Garcia's relevant medical evidence in accordance with the regulations, and determined the appropriate weight to give each medical opinion. R. 21–31. The ALJ found that Dr. Wagner's opinion was generally supported by the record as a whole, aside from his finding that Garcia would be limited to sitting four hours in an eight-hour workday, and would miss more than three days a month due to his impairments. R. 31. Thus, the

ALJ gave Dr. Wagner's opinion "great" but not "controlling" weight, and rejected those specific portions of the opinion that he found to be inconsistent with other substantial evidence in the record. R. 31.

The ALJ may choose to give less weight to the opinion of a treating physician if there is persuasive contrary evidence in the record. Hunter v. Sullivan, 993 F. 2d 31, 35 (4th Cir. 1992). In this case, substantial evidence supports the ALJ's decision not to adopt Dr. Wagner's opinion that Garcia was incapable of sitting more than four hours in an eight-hour workday and would miss more than three days of work per month.

The record reflects that Garcia had a long history of low back pain, for which he sought treatment sporadically during the relevant period.[3] Garcia was incarcerated from 2004 through 2006, and between 2009 and 2010. R. 23, 325–30, 335, 471, 662. On June 27, 2007, Garcia had a disability consultative evaluation, which found him capable of a full range of work at the medium exertion level. R. 362–65.

On May 24, 2010, consultative physician William Humphries, M.D., examined Garcia and noted severely reduced range of motion in his mid and low back region; tenderness to palpation of muscles in his entire lumbar region; straight leg raise negative to 80 degrees sitting bilaterally; and reduced range of motion of the lower extremities due to back discomfort. R. 477–80. Dr. Humphries diagnosed Garcia with diastolic hypertension, chronic cervical, thoracic and lumbar strain with degenerative disc disease, degenerative joint disease in both feet and possibly early mild chronic obstructive pulmonary disease. R. 480. Dr. Humphries concluded that Garcia was capable of medium exertion work, including sitting six hours in an eight-hour workday, with occasional climbing, kneeling and crawling. R. 480. An x-ray taken on May 24, 2010, showed

---

[3] Garcia's claim relates solely to the opinion of Dr. Wagner, which dealt with his physical impairments. Thus, the Court will not discuss Garcia's history of treatment for his mental impairments in this opinion.

7

degenerative disc disease at L5-S1, with mild arthritic changes in the facet joints from L3 to S1 and no fracture or subluxation. R. 476.

Garcia began treating with Dr. Wagner on June 7, 2010. R. 483. Garcia reported longstanding back pain after a job-related accident in the 1980's. Dr. Wagner noted that Garcia had not been on any chronic pain medications lately and had not tried any pain blockers. Garcia's physical exam was normal with leg raise "equivocal on left," but no motor loss. R. 484. Dr. Wagner diagnosed low back pain, and prescribed pain medication. R. 484. Garcia followed up with Dr. Wagner on September 15, 2010. R. 530. Garcia's primary complaint was depression. Dr. Wagner noted that Garcia's back pain was "very chronic some response to [M]otrin." R. 530. Garcia's physical exam was normal, and Dr. Wagner referred Garcia to physical therapy. R. 531.

Garcia attended physical therapy for his back pain in November and December 2010. R. 539–46, 553–58, 565–69, 577–81, 586–88, 599–607. On December 2, 2010, Garcia was making fair progress, although he still reported low back pain. R. 605. On December 13, 2010, Garcia followed up with Dr. Wagner, complaining of back pain occasionally radiating into both legs. R. 532. On exam, Dr. Wagner noted lumbar tenderness, and ordered an MRI. R. 532–33. On December 14, 2010, Garcia was making the expected progress during physical therapy as evidenced by his good tolerance for manual therapy and exercises. R. 620. An MRI taken on December 30, 2010, revealed mild intervertebral disc degeneration, endplate osteophytes, mild facet arthrosis and a prominent broad-based central disc extrusion at L5-S1, with mild compression of the ventral aspect of the thecal sac and mild stenosis of the L5-S1 intervertebral foramina. R. 645. On February 8, 2011, Dr. Wagner completed a medical source statement, finding Garcia capable of sedentary work, aside from limiting him to sitting four hours in an

8

eight-hour day, and finding that he would miss more than three days of work a month. R. 665–68.

Substantial evidence supports the ALJ's decision not to adopt Dr. Wagner's conclusion that Garcia cannot sit more than four hours in an eight-hour day and would miss more than three days of work per month. These findings are not supported by Garcia's records, including Dr. Wagner's own treatment notes. Dr. Wagner's treatment notes reflect complaints of pain, but they lack evidence of functional restrictions arising from that pain. Dr. Wagner's physical exams revealed nothing more than low back tenderness and an "equivocal" straight leg raise on the left. R. 483–84, 530–31, 532–33. Although objective exams show that Garcia has degenerative disc disease, there is no mention in Garcia's medical records that his ability to sit is restricted. Garcia points to no medical evidence that supports the opinion of Dr. Wagner that he is limited to sitting four hours in an eight-hour day. Dr. Wagner's restrictions are also inconsistent with Garcia's progress during physical therapy, and with Dr. Humphries' finding that Garcia is capable of a range of medium exertion work. R. 477–80.

Additionally, Garcia's treatment is not reflective of someone who is suffering from debilitating pain. Garcia's pain was treated exclusively with medication and physical therapy. There is no indication in the record that Garcia used other pain management techniques, such as TENS unit, dorsal stimulator, morphine pump, massage, acupuncture, chiropractor, or hot/cold packs. There is also no evidence in the record of physical manifestations of Garcia's pain, such as appetite loss or muscular atrophy. There is simply insufficient support for Dr. Wagner's conclusion that Garcia's pain would cause him to miss more than three days of work per month.

Viewed as a whole, the record reflects that Garcia suffers from pain that is largely managed with medication and is responsive to physical therapy. The ALJ carefully considered

9

the opinion of Dr. Wagner and adopted the majority of his recommended restrictions in determining Garcia's RFC. To the extent that Dr. Wagner's report was not adopted, substantial evidence supports the ALJ's decision to give those findings less weight.

## CONCLUSION

In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Garcia is totally free from any distress. The objective medical record simply fails to document the existence of any physical conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Garcia's claim for benefits and in determining that his physical and mental impairments would not prevent him from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Garcia's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

      Enter: February 18, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge